RECORD No. 23-1806

IN THE

# United States Court of Appeals

### FOR THE FOURTH CIRCUIT

XUNHUI CHENG AND KELIN CAI,
*Plaintiffs-Appellants,*

v.

DAN LIU; FOUNDERS GROUP INTERNATIONAL, LLC;
FOUNDERS NATIONAL GOLF, LLC; FOUNDERS ABERDEEN, LLC; FOUNDERS
DEVELOPMENT, LLC; FOUNDERS BRGC, LLC;
FOUNDERS GOLF MANAGEMENT, LLC; FOUNDERS IWGC, LLC; FOUNDERS
RHGC, LLC; FOUNDERS TRADITION, LLC; FOUNDERS WILD WING, LLC;
ATLANTIC DEVELOPMENT COMPANY, LLC; ATLANTIC COAST FUNDING, LLC;
WILD WING LAND AND DEVELOPMENT, LLC;
OFFSHORE CAPTAIN, LLC; D&C INTERNATIONAL HOLDINGS, LLC; FOUNDERS
BLUEWATER, LLC; FOUNDERS EVENTS, LLC;
FOUNDERS GCC, LLC,
*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT OF SOUTH CAROLINA AT FLORENCE

_____

OPENING BRIEF PLAINTIFFS-APPELLANTS
XUNHUI CHENG AND KELIN CAI

_____

Gene McCain Connell, Jr.
KELAHER CONNELL & CONNOR, P.C.
Post Office Drawer 14547
Surfside Beach, SC 29587
Phone: (843) 238-5648
gconnell@classactlaw.net

Anthony Scordo, III
ANTHONY SCORDO, ESQ., P.C.
1425 Pompton Avenue #2
Cedar Grove, NJ 07009
Phone: (973) 837-1861
anthonyscordo@msn.com

Reese R. Boyd, III
DAVIS & BOYD, LLC
Post Office Box 70517
Myrtle Beach, SC 29572
Phone: (843) 839-9800
reese@davisboydlaw.com

*Counsel for Plaintiffs-Appellants Xunhui Cheng and Kelin Cai*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __23-1806__       Caption: __Xunhui Cheng, et al. v. Dan Liu, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Xunhui Cheng and Kelin Cai__
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?                              ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                                  ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?                    ☐ YES ☑ NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    ☐ YES ☑ NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐ YES ☑ NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: s/ Gene M. Connell, Jr.                    Date:        10-6-23

Counsel for: Appellants

- 2 -

[ Print to PDF for Filing ]

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

JURISDICTIONAL STATEMENT ................................................................1

STATEMENT OF ISSUES .............................................................................1

STATEMENT OF CASE .................................................................................7

SUMMARY OF ARGUMENT .......................................................................8

ARGUMENT ...................................................................................................9

CONCLUSION ..............................................................................................41

STATEMENT REGARDING ORAL ARGUMENT .............................................41

# TABLE OF AUTHORITIES

## Cases

Abbott Labs v. Feinberg, 477 F. Supp. 3d 57 (S.D.N.Y. 2020) .............................39

Adams v. Fellers, 70 S. E. 212 (S.C. 1911) ...............................................39

Amgen v. Connecticut Retirement Plans & Trust, 568 U.S. 455,
    133 S. Ct. 1184 (2013)..................................................................23

Anderson v. Thomas, unpub. Case No. 2018-875   (S.C. App.
    2021) .....................................................................................33

Ashmore for Wilson v. Dodds, 262 F. Supp. 3d 341 (D. S. C.
    2017) .........................................................................31, 37, 39

Ayers v. Deportes, 35 S. E. 218 (S.C. 1900) ..........................................39

Baltimore v. Laborers International Union of NA, 67 F.3d 293,
    1995 WL 578084 at 1 (4th Cir. unpub. table decision 1995)...........................17

Charlotte Barber v. Branham, 191 S.E. 184 (S.C.  1937)...............................38

Commercial Credit Loans Inc. v. Riddle, 512 S. E. 2d 123 (S.C.
    App. 1999) ...............................................................................33

Crown, Cork Seal Co. v. Parker, 462 U.S. 345, 349, 103 S.Ct.
    2392, 2395 (1983)......................................................................10

Daubert v. Merrell Dow Pharma., 516 U.S. 869, 116 S. Ct. 189
    (1995) .....................................................................................11

Deiter v. Microsoft, 436 F. 3d 461, 466 (4th Cir. 2006) .........................22

EQT Prod. Co. v. Adair, 764 F.3d 347, 358 (4th Cir. 2014) .....................34

Farmer v. Florence County Sheriff's Office, 738 S.E. 473 (S.C.
    2013) .....................................................................................37

Fisher v. Virginia Elec. & Power Co., 217 F.R.D. 201, 211
    (E.D.Va.2003).............................................................................11

Gariety v. Grant Thornton, 368 F. 3d. 356, 366 (4th Cir. 2004) ...............10

General Telephone v. Falcon, 102 S. Ct. 2364 (1982) ...........................22

Gregory v. Finovia Cap. Corp. 442 F. 3d 188, 190 (4th Cir. 2006) .........9

Hewlett v. Premier Salons Intl Inc., 185 F.R.D. 211, 217 (D. Md.
    1997) .................................................................................22, 23

Houston v. Hill, 482 U.S. 451, 471, 107 S. Ct. 2502 (1987)...................40

In re Bernard L. Madoff Inv. Sec. LLC, 654 F. 3d 229 (2d Cir.
    2011) .....................................................................................31

In re Marriott Int'l, 341 F.R.D. 128 (D. Md. 2022)...............................23

In re Marriott Int'l, No. 22-1745 (4th Cir. 2023)......................................23

In re Receiver, Civ. No. 3:10-3141 (unpub. D.S.C. 2011)................................11, 12

In Re TD Bank Overdraft Fee Litigation, 325 F.R.D. 136
    (D. S.C. 2018) ...........................................................23, 27, 28

In re Zetia (Ezetimbe) Antitrust Litigation, 7 F. 4th. 227, 240-41
    (4th Cir. 2021).............................................................17

Int'l Woodworkers of Am., AFL-CIO v. Chesapeake Bay Plywood
    Corp., 659 F.2d 1259, 1268 (4th Cir.1981) .................................15

Klaxon v. Stentor Electric, 313 US 486, 61 S. Ct. 1020 (1941)..............................37

Lebovitz v. Mudd, 358 S. E. 2d 698, 700 (S.C. 1987) ............................................33

Lollis v. Lollis, 354 S.E.2d 559, 561 (1987) ......................................................20

Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 593
    (3d Cir. 2012)..............................................................34

Marisol A. v. Giullani, 126 F.3d 372, 376-377 (2d Cir. 1997) .........................27

McNair v. Rainsford, 499 S.E.2d 488, 501 (S. C. Ct. App. 1988) ........................19

Menezes v. WL Ross, LLC, 744 S.E. 2d 178, 188 n.2 (S.C. 2013) .......................37

Parker v. Asbestos Processing, LLC, No 11-cv-01800,
    1015 WL 127930, at *7 (D.S.C. Jan. 8, 2015) .............................27

Reed v. Big Winter Resort, 2016 WL 7438449 (D. S. 2018) .........................28

Reif v. Nagy, 106 N.Y.S. 3rd 5(1st Dept. App. Div. 2019).........................39

Rhodes v. EI Dupont, unpub., 2008 WL 2400944
    (S.D. W. Va. 2008) ........................................................10

Robinson v. Lorillard Corp., 444 F.2d 791, 802 (4th Cir. 1971).....................20, 21

Roe v. Doe, 48 F.3d 404, 407 (4th Cir. 1994) ...........................................40

Sheldon v. Blauvelt, 7 S.E. 593 (S.C. 1888)...............................................39

SSI Medical Services, Inc. v. Cox, 392 S.E.2d 789, 793-94 (1990) ...............20, 38

Thorn v. Jefferson Pilot Life Ins., 455 F. 3d. 311, 317
    (4th Cir. 2006)............................................................9, 18

United States Parole Comm'n v. Geraghty, 445 U.S. 388, 403,
    100 S.Ct. 1202, 1212  (1980)...............................................10

Wal–Mart Stores, Inc. v. Dukes, 564 U.S. 338, 131 S.Ct. 2541,
    2557 (2011)...............................................................20

**Statutes**

S.C. Code Ann. §15-3-530...........................................................33

S.C. Code Ann. Sec 15-69-10.....................................................37, 38

Statute of Elizabeth (SC 27-23-10A)..........................................................32

**Other Authorities**

*Common Law Restitution and Ponzi Schemes*, 92 <u>Boston Univ.
  Law Review</u> 939 (May 2012)............................................................ 31
Restatement (First) Conflict of Laws (1934)......................................... 37

# JURISDICTIONAL STATEMENT

The Plaintiffs-Appellants filed a Petition for Permissive Appeal pursuant to FRCP 23(f). This Court granted Plaintiffs-Appellants' Petition and this appeal follows. JA6026

# STATEMENT OF ISSUES

### A.    The Investment Fraud:

This putative class action involves a fraudulent investment scheme perpetrated by the Defendants, primarily in the People's Republic of China, in which the equivalent of several billion U.S. Dollars were defrauded from Chinese investors, and the ill-gotten gains from the investment scheme were used, among other things, to purchase approximately two dozen golf courses and other real estate in South Carolina. JA1656I Plaintiffs seek to impose a constructive trust over the real estate assets in question, and to recover the investment funds of thousands of investors who were defrauded in the Defendants' Ponzi scheme.

Beginning in June 2013, Defendant Dan Liu ("Liu") with a co-conspirator Xiuli Xue[1] ("Xue"), and others, established multiple "shell" corporations in the PRC

---

[1] Xiuli Xue, the CEO of Jiangsu Yiqian, was charged in the PRC with financial fraud and illegal fundraising, and was arrested by Chinese authorities. Her trial in the Nanjing Intermediate People's Court occurred on May 3, 2018. Xue was convicted at that trial and is now incarcerated in the PRC. Upon information and belief, Xue was sentenced in 2019 to 15 years in prison for her role in the Yiqian "Easy Richness" funding scheme.

to perpetrate their Ponzi scheme, including Jiangsu Yiqian LLC and Nanjing Yiqian LLC, which were known by their English names, "Jiangsu Easy Richness, LLC" and "Nanjing Easy Richness, LLC", (referred to herein as the "Easy Richness Entities"); see JA1852. Both of the Easy Richness Entities were under the control of Defendant Liu (JA1832 and JA1835).

Ostensibly, Nanjing Yiqian's business model was to raise investment funds by selling investment contracts to investors, while Jiangsu Yiqian would invest the funds raised in real estate and other projects to generate an investment return for investors. (JA1836-JA1839.) However, funds were moved without restriction between the two entities, and which were essentially two alter-ego entities, both under the exclusive control of Defendant Liu (JA2016, JA2017, JA2046, JA1845, JA1849). By promising high rates of return to investors in a country where private investment options are limited, the Easy Richness entities expanded rapidly, opening more than 160 branches in many cities across China between July 2013 and April 2016. (JA0054, JA1803-JA1804.) Plaintiffs allege this "Ponzi Scheme" perpetrated by Liu through his "Easy Richness" entities utilized incoming investment funds received to fund payments owed to existing investors, and also to fund the high current operating costs of the Company and the highly compensated management team led by Defendant Liu and Xiuli Xue. (JA1807, JA1831, JA1899, JA1912) The total funds raised by the Easy Richness Entities from its approximately 95,000

investors worldwide between July 2013, and April 2016, was in excess of $1 Billion USD ($1,000,000,000 USD), and may have been as much as $2 Billion USD ($2,000,000,000 USD). (JA1804, JA1899; *see also* JA3483-JA3484)

### B. The Plaintiffs' Investments:

Plaintiff Kelin Cai invested 460,000 CNY (approximately $66,000 USD) in the Easy Richness Entities on September 30, 2015, and March 18, 2016. (JA3982-JA3983) Plaintiff Xunhui Cheng invested a total of 1,000,000 CNY (approximately $143,000 USD) in the Easy Richness Entities on or about January 14, 2016. (JA3541-JA3542)

### C. The "Shell" Operating Companies and the U.S. Investment Scheme:

Between 2005 and 2009, Liu and Xue set up a series of companies in China, through which they passed the funds raised through the Yiqian / Easy Richness Ponzi scheme to real estate and investment projects in the U.S. beyond the reach of Chinese authorities. These Chinese "operational companies," Jiangsu Tianrui Danfo Commerce and Industry Co., Ltd.; Nanjing Shuojun Trade and Industry Co., Ltd.; and Nanjing Xinyuanyuan Commerce and Trade Co., Ltd., were in fact "shell" companies that did not conduct legitimate business, but that were instead alter-ego entities under the exclusive control of Defendant Liu. (JA1835-JA1838) Beginning on or about July 14, 2014, and continuing through at least March 15, 2015, Defendant Liu made application to the Chinese State Administration of Foreign

Exchange, a governmental authority of the PRC that regulates overseas investment by Chinese companies and citizens, for the approval of the export of more than $800 Million USD to the US, for the purpose of funding investments in real estate in the United States, and in particular, various golf course properties located around Myrtle Beach, South Carolina. (JA2545-JA2548.)

Beginning June 11, 2014, Defendant Liu, acting through a series of agents in the United States, formed a series of no less than seventeen (17) LLCs and other corporate entities in South Carolina and Delaware, for the purposes of acquiring real estate and other investments in the United States (the "U.S. Subsidiaries") for his personal benefit and enrichment, using the investment funds of defrauded investors taken through the Easy Richness Ponzi scheme.

On or about April 13, 2015, one of the U.S. Subsidiaries, Founders Development LLC, purchased two tracts of land in Horry County, South Carolina, for a total of $2,100,000, the first purchase of what would become multiple purchases of U.S. golf courses and other real estate assets located primarily in the Myrtle Beach, South Carolina area, by the U.S. subsidiaries. On or about April 22, 2015, Founders National Golf, LLC, another of the U.S. Subsidiaries, purchased seven golf courses from three different entities in three transactions totaling approximately $32,000,000 USD. (JA0094-JA0099, JA0200, JA1356-JA1357).

Ultimately, Liu used the proceeds of the Easy Richness Ponzi scheme in China to purchase twenty-two (22) golf courses in South Carolina. Id.

As Ponzi schemes always do, eventually the Easy Richness entities fell behind and were unable to continue making current interest payments to their investors. The final collapse occurred on April 9, 2016, when the Easy Richness offices across China were raided and forced to close. (JA0050, JA0097, JA0127). Liu and his family had traveled to Europe in April of 2016, and when they learned that the Yiqian/Easy Richness Entities had been raided by the police in several Chinese cities, they refused to return to China. (JA1837) In the April 9, 2016 collapse, officers of the Jiangsu Provincial Government and Police Department raided multiple offices of Nanjing Yiqian in the Jiangsu and Zhejiang Provinces of the PRC, seizing various computers, servers, and hardcopy financial records, and froze multiple financial accounts utilized by the Easy Richness Entities within the PRC. (JA1803, JA1816, JA1817, JA1893). On April 10, 2016, Defendant Liu released a video which has been posted and reposted on various websites on the Internet, advising Easy Richness investors not to panic, but rather to remain calm and to be patient, that he was going to "sell assets in the United States" to repay Easy Richness investors. (JA6028).

On March 27, 2017 the General District Attorney's office of the Jiangsu Province of the PRC issued a press release regarding its authorization to arrest

Defendant Liu, Xue, and eleven other senior executives of the Yiqian Funding entities. (JA4264-JA4266, JA1656K). A criminal trial for Xue was held in the Nanjing Intermediate People's Court, Jiangsu PRC. Xue testified at her criminal trial that large overseas funding transfers were made by Yiqian, and that many transfers were directed to the United States, where they were used to fund Liu's overseas investments and purchase golf courses in South Carolina. (JA1818, JA1656J). Xue was convicted of fundraising fraud at her trial and, upon information and belief, remains incarcerated in the People's Republic of China.[2]

While Plaintiff Kelin Cai invested 460,000 CNY (approximately $66,000 USD) and Plaintiff Xunhui Cheng invested a total of 1,000,000 CNY (approximately $143,000 USD) in the Easy Richness Companies, most of the 95,000 Easy Richness investors invested 100,000 CNY or less (approximately $14,347 USD). JA3806-JA3844, JA3854-JA3856. Realistically, if this class action does not go forward, those investors will have no avenue of recovery against the nearly $1 Billion USD in Yiqian "Easy Richness" assets that were stolen and then wrongfully diverted to the United States, as individual actions would not be feasible, and no recovery against the assets can be accomplished from China. (JA3483.)

---

[2] 520,000 people watched the trial live on the Chinese Court's website. JA1656J

## STATEMENT OF CASE

The Plaintiff originally filed this putative class action in the Horry County Court of Common Pleas, South Carolina. Plaintiff class are mostly Chinese citizens who invested in Defendants' companies. The money was then transferred to the United States and Defendants purchased golf courses and have refused to pay the class members. The Defendants removed the case to the United States District Court of South Carolina, Florence Division. Extensive discovery was conducted and the class representatives had their depositions taken in Myrtle Beach, South Carolina. The parties have performed extensive discovery and the joint appendix record on appeal contains approximately 6027. The discovery included expert reports and the deposition of one of the Plaintiffs' experts, Ivan Cardillo. The other expert for the class plaintiff was unable to appear in the United States before October 25, 2022 due to Covid restrictions and the District Court refused to extend the Scheduling Order. JA1752J-JA1752L. The plaintiffs filed their motion for class certification which included about 3,562 pages of depositions and written evidence in support of their motion. JA1755-JA5317. The District Court, without any hearing, denied the motion for class certification in a brief order. JA6004. The District Court's Order does not address Plaintiffs' specific evidence of commonality, typicality, manageability, predominance, and the adequacy of representative parties. Further,

the Order is silent as to the subclasses requested by Plaintiffs. Plaintiffs filed their

Petition for Permissive Appeal pursuant to FRCP 23(f) which this Court granted.

## SUMMARY OF ARGUMENT

(1)    The district court abused its discretion in failing to properly assess the complete record on plaintiffs' motion to certify the class by failing to evaluate expert opinions submitted to demonstrate that a judgment of the District Court would be recognized and enforced in China.

(2)    The district court abused its discretion by ruling that the claims being asserted by each putative class member against defendants required individual trials to take place in China governed by Chinese law.

(3)    The district court abused its discretion in ruling that the primary relief sought by plaintiffs were individual money damage awards where the overarching class sought equitable relief under 23(b)(2) deeming the real properties purchased by defendants using plaintiffs' funds held in constructive trust with a receiver appointed to liquidate and distribute same to the proper victims.

(4)    The district court abused its discretion in prematurely rendering merits' rulings at the certification stage including (a) ruling that the court could not properly adjudicate class members individual claims, given their disparate investment histories and varying times of accrual and expiration for statute of limitations purposes, both purportedly resulting in lack of commonality and typicality warranting class certification denial (b) ruling that use of Chinese courts and procedures is necessary to fairly adjudicate the underlying claims for breach of contract given they arose in China, allegedly raising class manageability issues warranting denial of certification (c) ruling that formation of a constructive trust would fail to render the relief sought by the overarching class because of the alleged inaccessibility of a database of plaintiff victims given the noncooperation of the Chinese government and need to comply with the Hague Convention.

(5)    The District Court abused its discretion in rejecting plaintiffs' position that South Carolina law should apply to their claims seeking equitable relief in the form of imposition of a constructive trust to remedy unjust enrichment and fraudulent conveyance as the situs of the real property purchased by defendant using their stolen funds, or at the very least failing to certify to the S.C.

8

Supreme Court the issue of choice of law where the question remains unsettled in these actions involving transfer of proceeds obtained in a Ponzi scheme.

# ARGUMENT

I. <u>Standard of Review:</u>  **A district court is given discretion under Rule 23 to either grant or deny class certification on the premise of its expertise in managing complex litigation. <u>Gregory v. Finovia Cap. Corp</u>. 442 F. 3d 188, 190 (4th Cir. 2006). Nevertheless, an appellate court must reverse discretionary decisions pertaining to certification should it deem that the district court has abused its discretion in deciding plaintiff's application by committing errors in applying the law and, or, rendering "clearly erroneous" factual findings. <u>Thorn v. Jefferson Pilot Life Ins</u>., 455 F. 3d. 311, 317 (4th Cir. 2006).**

II. **Class certification in the manner proposed by plaintiffs clearly furthers the practical and equitable reasons behind enactment of Rule 23 and the district's court's factual finding that it could not manage putative class members' claims was clearly erroneous and rendered prematurely, with most of the record not having been considered.**

Plaintiffs maintain that Rule 23 certification with subclasses defined as proposed in the lower court, the only effective way plaintiffs' claims seeking return of funds stolen from them in China as a result of defendants' fraudulent "Ponzi" scheme can be properly adjudicated in the jurisdiction where the funds are now located, having been used to purchase real property now titled in defendants.  The Rule 23 class action device was adopted for the precise reason class status is sought here, namely to permit a group of wronged individuals to consolidate their claims that are too small to be pursued separately. Unitary adjudication through class litigation furthers numerous practical purposes that benefit the court and parties on

9

both sides, including judicial economy, cost effectiveness, convenience, consistent treatment of class members, protection of defendants from inconsistent obligations and allocation of litigation costs among numerous, similarly situated litigants. See, e.g., Crown, Cork Seal Co. v. Parker, 462 U.S. 345, 349, 103 S.Ct. 2392, 2395 (1983); United States Parole Comm'n v. Geraghty, 445 U.S. 388, 403, 100 S.Ct. 1202, 1212 (1980).

A district court is obliged to perform a rigorous analysis and its analysis must include proof in addition to the pleadings. Gariety v. Grant Thornton, 368 F. 3d. 356, 366 (4th Cir. 2004). Such analysis should include considering the expert testimony proffered by the party seeking certification. Ibid. In conducting its class certification analysis, the lower court clearly should consider expert reports and even expert testimony, though there is apparently no precedential authority requiring a full-blown Rule 703 hearing at the certification. See e.g. Rhodes v. EI Dupont, unpub., 2008 WL 2400944 (S.D. W. Va. 2008) (addressing applicability of Daubert[3]). However, lower courts should be cautioned from "inquir(ing) no further into the merits than is necessary to determine the likely contours of the action should it proceed on a representative basis." Fisher v. Virginia Elec. & Power Co., 217 F.R.D. 201, 211 (E.D.Va.2003).

---

[3] Daubert v. Merrell Dow Pharma., 516 U.S. 869, 116 S. Ct. 189 (1995)

In their certification petition, plaintiffs established that the relief sought, namely creation of a constructive trust holding real properties defendants purchased with their ill-gotten gains, with the court appointing a receiver to oversee said properties was the most economical, cost effective, and convenient method for ensuring consistent treatment of class members. Said receiver would be encharged to liquidate the properties and effectuate restitution using the proceeds. This approach is consistent with prior decisions of the District Court of South Carolina to effectuate restitution to Ponzi Scheme victims. *See, e.g.* In re Receiver, Civ. No. 3:10-3141 (unpub. D.S.C. 2011). There, defendants were convicted of criminal violations which included transportation of stolen goods and money laundering and were subject to an order of forfeiture to pay restitution amounting to $82 million. The appointed receiver devised a plan for administration of claims and ultimate distribution of the Estate. A number of victims challenged the Plan not having been awarded return of 100% of their investments. Others complained that they ended up getting no return from the Receiver Estate. The Court nevertheless approved the proposed Plan as providing adequate due process with opportunity to be heard and fair and equitable in its method for claims analysis and methods of distribution, pointing out that, unfortunately, the victims would not be made completely whole as much of the estate was depleted "in maintaining the exorbitant lifestyle enjoyed by (the perpetrators, their associates and families)."

In contrast to the district judge in <u>In re Receiver</u>, *supra*, the lower court here, in rejecting proposed class definitions, which included an overarching class seeing designation of the ill-gotten property to be held in constructive trust, appears more concerned with protecting the criminal defendants than the victims of the defendants' Ponzi Scheme. Defendants are all non-U.S. citizens living here under the protection of our laws from Chinese authorities' enforcement efforts to bring them to justice, while at the same time enjoying exorbitant lifestyles afforded from their stolen holdings. The lower court decision failed to consider, or even discuss, the internet video of Defendant Liu released to investors worldwide wherein he admits he took Plaintiff class money to invest in real estate in the United States. JA6028. Liu denied in his deposition having fled China and denied being wanted by the Chinese authorities for financial crimes. JA1949-JA1950. Liu's confederates and employees in China were arrested and many are serving long jail terms. JA1800-JA1919.

Class treatment of these plaintiffs' claims further a key purpose of Rule 23 by spreading litigation cost among numerous similarly situated parties who could not afford to pursue the litigation individually. Indeed, it is the only way to achieve the goals of Rule 23, fairness, convenience and consistency. The lower court's ruling that individual trials in China are somehow necessary to afford due process, if upheld, would be the proverbial "death knell" effectively ending plaintiffs' practical

ability to present their claims, as corroborated by the expert opinion testimony proffered. Had his report even been considered, Plaintiffs' expert Ivan Cardillo would have testified that defendant Liu would not face civil liability in China, would never pay the restitution ordered by the criminal court and would not be extradited any time in the near future. Furthermore, the losses of the average investor were less than $5,000 which, with few, if any, exceptions represented at least a large portion of, and for many, their entire life savings. It can be presumed that travelling to the United States for a civil lawsuit is outside all of the victims' financial wherewithal. Also, given the complexity of the Ponzi scheme and the number of individuals involved in effecting it, without class certification there would be no way any one of these victims could be able to marshal the relevant evidence to present to the District Court at the merits stage.

A close perusal of the lower court's opinion reveals that it failed to even attempt to conduct the required rigorous analysis of the record which Rule 23 mandates. The court's factual analysis instead is predicated almost wholly upon reviewing the representative plaintiff allegations as to their individual investments and simply seeking to rehash their investment histories in order to compare and contrast them. The court concedes that "if the investment was a Ponzi scheme, then the money (Defendants) received payments was subject to disgorgement and return to the investors who funded those payments." (JA6016). The court then concludes,

13

however, that this remedy is impossible without an "individualized analysis for each putative class member to determine the existence of each contract and the terms and timing of each payment compared to the timing of the investments of other putative class members, which could be numerous." Id., at JA6016-JA6017.

The District Court's ruling here denying plaintiffs' class certification application was, of course, rendered solely on the parties' written submissions and, not only was no testimonial hearing conducted, the court did not even conduct oral argument. A number of decisions in this Circuit have determined that a hearing at the certification stage, consisting of fact and often expert testimony may well prove appropriate and useful, starting with Int'l Woodworkers of Am., AFL-CIO v. Chesapeake Bay Plywood Corp., 659 F.2d 1259, 1268 (4th Cir.1981) ("It is not essential to the resolution of every class certification motion that the trial court conduct a hearing, but it is *essential that a plaintiff be afforded a full opportunity to develop a record containing all the facts pertaining to the suggested class and its representatives*.")[4] As this appellate Court has once stated, "(i)t is seldom, if ever, possible to resolve class representation questions from the pleadings, and where facts

---

[4] Plaintiffs developed an extensive record of over 5,800 pages which the District Court failed to review. Plaintiffs' extensive record included depositions of its expert Cardillo, JA4353-JA4584, the expert report of Ivan Cardillo, JA2225-JA3485, an expert report of Victor Gao, JA4748-JA5356, internet video of Liu, JA6028, deposition of Liu, JA1920-JA2224, records of forms and common contracts by class members, JA3720-JA3748, and marketing materials, JA3463-JA3481, all of which prove or show common questions of law and fact.

developed during discovery proceedings are inadequate, an evidentiary hearing should be held on the request of the parties or, if necessary for a meaningful inquiry into the requisites of Rule 23, by the court *sua sponte*." *Ibid.*

Certainly, the decision not to schedule a formal hearing or even argument fell within the District's Court's discretion. However, given the voluminous record and number of legal issues raised it is plaintiffs' position that in this context the absence of any testimony or attorney argument constituted an abuse of same, both for the sake of the parties and this reviewing court. While the absence of any sort of recorded proceedings alone may not constitute reversible error, plaintiffs maintain that, combined with the numerous factual finding shortcomings and legal errors, the court's decision to deny certification must be reversed and certification must be granted, or at the very least, the matter remanded for a hearing as to contested factual issues.

With respect to expert testimony, while defendant had moved to strike the reports and attached exhibits of Ivan Cardillo and Victor Gao, such motion was never disposed of by the District judge and after denial of certification was denied as rendered moot by the denial of certification. Thus, this Court can and should consider the reports of Gao and Cardillo found at JA4748-JA5315 and JA2225-JA3498. Plaintiffs note that Gao and Cardillo are well known experts on Chinese law and have lived in China and taught at Chinese universities and law schools.

JA4750-JA4751; JA2228-JA2231. The experts reports of Cardillo and Gao clearly

show their experience, knowledge, education and training as experts on Chinese law.

JA4750-JA4751; JA2228-JA2231. Further, the District Court erred as a matter of

law in refusing to allow Gao's deposition in November 2022 in the United States.

The reason Gao was unable to come to the United States before November 2022 was

the restrictive Covid Chinese requirements which kept him from leaving the country.

JA1752J-JA1752K. (*See also* Text Order Denying Plaintiffs' Motion to Extend

Scheduling Order JA1752L).

> **III.  The District Court abused its discretion in presuming, without support in the pleadings or submissions, that plaintiffs solely seek individual money damage awards, though the primary relief requested is judicial imposition of a constructive trust, with a receiver appointed to hold and liquidate ill-gotten real properties with proceeds used to effect restitution.**

As pointed out to the District Judge in the original petition for certification,

while practicality and expense may be relevant considerations in evaluating the

proposed putative class, perhaps mandating the need for review of numerous files at

the merits stage, such considerations cannot alone be the reason for denying class

certification. In re Zetia (Ezetimbe) Antitrust Litigation, 7 F. 4$^{th.}$ 227, 240-41 (4th

Cir. 2021); citing Baltimore v. Laborers International Union of NA, 67 F.3d 293,

1995 WL 578084 at 1 (4th Cir. unpub. table decision 1995). Plaintiffs contend on

appeal that the district court reversibly erred by ruling without support, that "claims

for monetary relief predominate and plaintiffs plainly seek individualized awards for damages for themselves and other putative class members…." JA6018. Accordingly, "class certification is improper here because the predominate[5] relief sought is individualized."

The lower court's opinion (footnote 8 (p. 15), JA6018) did attempt to summarize the various counts in the Amended Complaint, but incorrectly stated that each of those counts seeking equitable relief also sought money damages. The Amended Complaint in Count 5 specifically requests both imposition of a constructive trust over all golf courses and real property owned in South Carolina purchased with plaintiffs' funds and an injunction preventing defendants from selling said properties during the pendency of the lawsuit. Count 6 seeks as its only form of relief establishment of a receivership including all of the properties purchased using plaintiffs' funds and count 7 demands an accounting by defendants of proceeds for which they were unjustly enriched. The "Wherefore" clause lists

---

[5] Plaintiffs contend that the district court in its opinion unfortunately caused lack of clarity on review by utilizing the term "predominate" for the proposition that the major or primary form of relief sought by plaintiffs is individualized legal (money) damages. infra. "Predominate" is, of course, a term of art in this context and is used in Rule 23 as an element to be proven to warrant certification of classes seeking legal damages in 23(b)(3), in order to evaluate whether cohesivity of putative class members warrants class status such that common questions predominate over individual one. Thorn, supra. For review purposes, plaintiffs herein will employ the term "primary" in disagreeing with that aspect of the ruling as a means of avoiding confusion.

nine (9) forms of relief only one of which is legal (monetary) damages. Nowhere is it indicated therein that an award of money damages is the primary relief being sought in the lawsuit as the district court concluded without support in either the Complaint or the Petition to certify. Indeed, one subclass requests only equitable relief. JA1769. This sub-class is defined as "any investor who loaned money by way of standard contract to the Easy Richness Companies (Easy Richness Financial Information Consulting; Jiangsu Easy Richness Management Co. and Jiangsu Easy Richness Founders Real Estate Co.), and whose funds were used to purchase golf courses in Horry County, South Carolina, or were used to repay investors whose funds had already been used to purchase golf courses in Horry County, South Carolina, and who had not received full restitution by the Chinese Courts." JA1769. This sub-class would include only claims for monies that have not been repaid through restitution as ordered by a Chinese Court.

Plaintiffs, in their pleadings sought to apply South Carolina law as to the appropriateness of creating an overall class consisting of all putative class members requesting the equitable relief judicially declaring creation of a constructive trust holding titles to each of the subject golf courses for which a trustee or receiver would be appointed to hold the properties on their behalf with the goal to liquidate and apply the proceeds to restitution. In McNair v. Rainsford, 499 S.E.2d 488, 501 (S. C. Ct. App. 1988), the appellate court held, "(A) constructive trust arises entirely by

operation of law without reference to any actual or supposed intentions of creating a trust.  It is resorted to by equity to vindicate right and justice or frustrate fraud." "Because an action to declare a constructive trust is in equity, this court may find the facts in accordance with its own view of the evidence." Lollis v. Lollis, 354 S.E.2d 559, 561 (1987). A constructive trust arises whenever a party is unjustly enriched by obtaining money not equitably belonging to him which he cannot in good conscience retain or withhold from another who is beneficially entitled to it, whether the money has been paid by accident, mistake of fact, or fraud or has been acquired through a breach of trust or the violation of a fiduciary duty.  SSI Medical Services, Inc. v. Cox,  392 S.E.2d 789, 793-94 (1990). Rule 23(b)(2) class certification applies to situations where classes are only seeking injunctive or declaratory relief; in contrast to 23(b)(3), 23(b)(2) has no predominance or superiority requirements.  Rule 23(b)(2) imposes a lesser  hurdle to class certification than 23(b)(3) because it eschews costly procedural protections (most importantly, members of a 23(b)(2) class have no notice or opt out rights as do members of a 23(b)(3) class).  Robinson v. Lorillard Corp., 444 F.2d 791, 802 (4th Cir. 1971). "The key to the (b)(2) class is the indivisible nature of the remedy warranted." Wal–Mart Stores, Inc. v. Dukes, 564 U.S. 338, 131 S.Ct. 2541, 2557 (2011). Certification under this provision is appropriate "only when a single injunction or declaratory judgment would provide relief class wide, i.e. to each member of the class." Id.  This is especially true since

the class members' monies was given to the Defendants by way of form contracts. ,
JA3720-JA3748; JA5832.

Therefore with respect to the relief sought in the Complaint and the proposed
class definitions, the district court clearly erred as a matter of law in denying
plaintiffs application for 23(b)(2) class status because their claims were
"individualized." JA6019. It is only for proposed classes seeking legal relief solely
in the form of money damages where predominance of common claims and
superiority of forum become relevant in the certification analysis; the court here
failed to even acknowledge the distinction between the elements required to
establish entitlement to class status under (b)(2) from those of (b)(3). As noted,
supra, neither of those elements is required to demonstrate all putative class
members are entitled to equitable relief because 23 (b)(2) imposes a lower standard
for class certification than (b)(3), citing Robinson, supra. Putting aside the various
putative class members' differing claims as to amounts for restitution they may
eventually be deemed entitled to, the entire class of plaintiffs seeks identical
equitable relief. Since the ruling denying class certification under 23(b)(2) was
premised on a clear error of law, plaintiffs maintain such denial standing alone
constitutes reversible error warranting this appellate court either reversing and
certifying the 23(b)(2) class or at the very least remanding for factual findings as to
whether the elements presented were present to sustain their claims for equitable

relief. The record on appeal clearly shows that Liu took Plaintiffs' monies and invested them in real estate in South Carolina. JA5317, victim narratives; video of Liu JA6028; marketing materials JA4267-JA4297; and new articles JA4305-JA4352. Liu's internet video statement to investors and his deposition admit the money came from Huang along with the conviction of Liu's partners and employees clearly show the uniformity of the fraud which was perpetrated on the class members. JA6028.

**IV. Plaintiffs easily demonstrated entitlement to class certification, including numerosity, typicality and commonality and the District Court abused its discretion with premature merits rulings utilized as a basis for its certification denial on grounds of lack of typicality and commonality of claims.**

Plaintiffs maintain they clearly satisfied their burden of proof in demonstrating both commonality and typicality of claims. Since commonality and typicality normally go hand-in-hand, their proofs tend to overlap. General Telephone v. Falcon, 102 S. Ct. 2364 (1982), n.13. Typicality simply means that the claims and defenses of the class representatives are typical of those of the class. Rule 23(a)(3). Thus, as goes the claim of the plaintiffs' putative representative so must go the claims of the class. Deiter v. Microsoft, 436 F. 3d 461, 466 (4th Cir. 2006). Factual differences do not render a claim atypical so long as they are based on the same course of conduct and same legal theory. Hewlett v. Premier Salons Intl Inc., 185 F.R.D. 211, 217 (D. Md. 1997). The movant must address how differences

between the representatives' claims and the claims of the absent members implicate the burden of proof. Ibid.  Typicality does not require that the representatives' claims contain identical facts but does require identical legal arguments. Basically, where the defendants pursued the same course of conduct as to all class members (including the representatives) typicality is satisfied. In re Marriott Int'l, 341 F.R.D. 128 (D. Md. 2022) rev'd on other grounds, In re Marriott Int'l, No. 22-1745 (4th Cir. 2023). In an action where fraud (intentional misrepresentation) is alleged, similar material misrepresentations and omissions can establish class entitlement through commonality and typicality. Amgen v. Connecticut Retirement Plans & Trust, 568 U.S. 455, 133 S. Ct. 1184 (2013) This applies even where individualized proof of damages differ. In Re TD Bank Overdraft Fee Litigation, 325 F.R.D. 136 (D. S.C. 2018).

The District Court's Order admits that Plaintiffs proved numerosity in that the deposition of Plaintiffs' expert Cardillo stated there were over 95,000 class members. (JA4450)  Cheng testified he knew 90,000,000 members had been affected.  JA3518.  In another part of Cheng's deposition he indicated there were 70,000 victims in China.  JA3633.  Further, Cheng's testimony was he had 800 peoples' contracts who were all uniform.  JA3650-JA3651.  See also Cai Deposition wherein he stated over 10,000 people had been cheated.  JA3877.  As a result of

these statements, the District Court Order found numerosity had been met by the Plaintiffs.

Plaintiffs produce a plethora of evidence regarding the commonality and typicality of the claims. Each of the class members invested money based on uniform contracts. Each of the class members received uniform marketing materials. Each of the class members were unaware that the monies they were investing was being used to invest in real estate in the United States. Liu's internet confession in which he promised to go to the United States and obtain Plaintiffs' money is memorialized in a video which has been viewed thousands of times. See JA6028. Further, the trial of Xiuli Xue clearly describes the common scheme by Liu to obtain monies in China and spirit them to the United States to purchase real estate. JA0123-JA0244. Also, the marketing materials provided pictures and representations which were shown to the class members of golf courses in Myrtle Beach which were purchased with their funds. Further, Cardillo's and Gao's expert reports each show the economical and effective means of the designated investor class seeking recovery. JA4456-JA4457.

Plaintiffs also in their motion for class certification listed 21 common questions of law and fact which apply to this case. The common questions of law in

fact can be found in Plaintiffs' Motion for Class Certification, JA1782.[6]

Specifically, Plaintiffs note common issues include form contracts, all the stolen

---

[6]       1. Did the defendants breach the form contract which plaintiffs signed?

2. Did the defendants comply with the provisions and terms of the form contract which the plaintiff's signed?

3. Did the defendants breach the contract by investing plaintiff's money in golf courses and other real estate assets in the United States?

4.  Is there a pattern of traceable funds from the plaintiff to the Myrtle Beach Golf Courses such that a constructive trust is necessary?

5. Did the defendants violate the South Carolina Securities law when it offered investors in China investments of golf course in Myrtle Beach with plaintiffs' money?

6. Did the defendants breach the form contracts that plaintiffs signed by failing to pay the plaintiffs interest?

7. Did the defendant breach a fiduciary duty in failing to honor the form contracts signed by plaintiff?

8. Did defendants unlawfully convert plaintiffs' funds to purchase golf courses in Myrtle Beach?

9. Did defendants unjustly enrich themselves with plaintiffs' monies and use those monies to purchase golf courses in Myrtle Beach?

10. Did defendants use plaintiff funds to purchase golf courses in Myrtle Beach, thus creating a constructive trust over the Myrtle Beach golf courses?

11. Did the defendant Liu and the related companies enter into a Ponzi scheme depriving plaintiffs of its monies?

12. Is defendant Liu and the other defendants enjoined from denying plaintiff its monies has been invested in Myrtle Beach golf course?

13. Is the only remedy available to the plaintiffs a lawsuit in the United States District Court since the real property at issue is in the District Court's jurisdiction?

14. Did the defendants violate their fiduciary duty to the plaintiffs by failing to follow the provisions of the form contract signed by each plaintiff?

15. Did the defendants violate a fiduciary duty to the plaintiff by failing to follow the provisions of the form contract signed by each plaintiff?

16. Did the defendants act in a uniform course of conduct as to the plaintiff by failing to repay the investors their monies?

Continues on next page

money being placed into real estate in South Carolina, the confessions of Liu that the money was taken from China, the trial of Xiuli Xue, the deposition of Liu in which he admits that the money came from Huang, who is also in jail in China for his role in the Ponzi scheme.

Other testimony and evidence proving common questions of law and fact can be found in Liu's deposition in which Liu indicates the majority of the money was obtained by Huang and the evidence shows that Huang obtained the money through illegal financing activities in China and is currently in jail in China for illegal fundraising. JA2017, JA2019, JA2045, JA2046. Liu also testified in his deposition that he directed Founders' entities to prepare and record multiple promissory notes and mortgages in his favor, where there is no evidence Liu contributed any funds to the purchase of the golf courses and other real estate in question. *See* JA2572-JA3462. See also Exhibits 23 and 24 which are two examples of mortgages in

---

17. Did defendant Lui waive his right to object to a class action when he appeared in a video admitting he had invested plaintiffs' monies in golf courses in the United States?

18. Does plaintiff have any remedy in regard to the ownership of the golf courses in the United States without action by this Court?

19. Did defendants violate the South Carolina Uniform Securities Act in offering plaintiff marketing materials in an attempt to get plaintiff to invest its money in golf courses in the United States?

20. Did the defendants breach the contract with plaintiff accompanied by a fraudulent tact when defendants invested the monies in golf courses in Myrtle Beach and not according to the terms of the form contract signed by plaintiffs?

21. Is a constructive trust enforceable by the plaintiffs over monies it paid the defendants?

question where the mortgage is in the amount of $26,500,000 and $45,884,421 were assigned to Liu for no apparent consideration.  JA4608-JA4724.  Of course, all of this shows a common scheme or plan by Liu to seize and/or steal class members' monies.

The pivotal question to be addressed by a certification court reviewing the record  for commonality and typicality is whether defendants' liability depends on legal and factual issues which are the same for all class members, wherever located. In Re TD Bank Overdraft Fee Litigation, supra. "Where the injuries complained of by named plaintiffs allegedly result from the same unlawful pattern, practice or policy of the defendants, the commonality requirement is usually satisfied."  Parker v. Asbestos Processing, LLC, No 11-cv-01800, 1015 WL 127930, at *7 (D.S.C. Jan. 8, 2015) (citing Marisol A. v. Giullani, 126 F.3d 372, 376-377 (2d Cir. 1997) (Commonality satisfied….where injuries were alleged to have arisen from 'a unitary course of conduct by a single system.'"); see also In re TD Bank, supra (noting uniformity, both in definition and implementation, of policy at issue.)  The use of standardized documents and procedures for each putative class member normally satisfies Rule 23 (b)(3) requirements, even where the nature and amount of damages differ. In re TD Bank Overdraft Fee Litigation, supra.  See also Reed v. Big Winter Resort, 2016 WL 7438449 (D. S.C. 2018) (each class member's claims were premised upon defendants' alleged omissions from standardized uniform written

documents). The general test is whether proposed classes are sufficiently cohesive to warrant adjudication. All members' claims here are inextricably interrelated. The Amended Complaint alleges a common course of wrongful conduct by defendants characterized by a continuous series of false representations and material omissions that began from the founding of the investment to Liu's confession of wrongdoing and promise to return all monies memorialized in a video published online that has been viewed thousands of times.  JA6028.  As noted, uniform marketing materials and false representations of returns was endemic. JA4267-JA4297.  Evidence of concealment of the nature and place of investment and blatant breach of the contractual obligation to disclose where and how the funds were invested is basically uncontroverted. The interrelated nature of each member's claims, as exemplified by the representative plaintiffs, of what was essentially little more than a criminal enterprise is indisputable. Accord, <u>Anwar v, Fairfield Greenwich</u>, 289 F.R.D. 105 (S.D.N.Y. 2013).

The presence of the golf course properties in this jurisdiction, the use of identical contracts, dispensation of the need for duplicative discovery and the inability of the absent class members primarily located in China all weigh toward certification of the entire member class as the most <u>economical and effective means of the designated investor class to seek recovery.</u> (*See*, Deposition of Cardillo, Ex. 18 JA4447-JA4473.  Plaintiffs contend generally that the district court's factual

findings and legal conclusions underlying its denial of certification for lack of commonality and typicality were unsupported, clearly erroneous, and rendered prematurely without the required "rigorous analysis."   In addition, the findings supporting alleging lack of manageability were unsupported, or at the very least premature, given that decertification for alleged lack of manageability remains an available remedy.

More specifically Plaintiffs contend the fact finding deficiencies and legal errors as set forth in the opinion related to alleged failure of proof of commonality and typicality constitute clear and obvious reversible error as set forth below as follows:

    **A.**    **In ruling that Plaintiffs failed to establish commonality and typicality of claims, the District Court abused its discretion and reversibly erred in ruling that the putative plaintiffs' disparate investment histories, and varying times of accrual and expiration for statute of limitations purposes made their claims uncommon, and atypical.**

The District court held that Plaintiffs were unable to demonstrate typicality and commonality by not "identify(ing) any common questions of law or fact that they contend will resolve an issue that is central to the validity of each one of the claims in a single stroke. Plaintiffs in their certification application did list 21 common questions to be resolved in addressing each class member's claims. JA1782.  However, each of those proposed issues and questions to be addressed after certification can be summed up for the entire Rule 23(b)(2) overarching putative

class, (1) to identify which realty should properly be deemed held in constructive

trust on plaintiffs' behalf, having been purchased using plaintiffs' proceeds

fraudulently obtained by defendants through fraud and fraudulently conveyed to the

jurisdiction; (2) to determine each class member's entitlement to restitution after the

properties held in trust are liquidated for distribution by an appointed or designated

receiver.

While each putative plaintiff has a differing investment history and some may

have actually profited from participating in the defendants' Ponzi scheme,

certification of the 23(b)(2) class and appointment of a receiver to liquidate the

properties and oversee the proceeds to be used for restitution would eliminate a need

for individual trials. The receiver would then be encharged with determining which

class members were the so-called "Winners and losers" under the Ponzi Scheme.

Imposition of this proposed equitable remedy would eliminate what the district court

saw as the need to "to determine the existence of each contract and the terms and

timing of each payment compared to the timing of the investments of other putative

class members, which could be numerous." Under the proposed remedial scheme

utilizing the constructive trust device the manageability concerns prematurely

expressed (prematurely) by the District Court would essentially be abrogated.

In <u>Ashmore for Wilson v. Dodds</u>, 262 F. Supp. 3d 341 (D. S. C. 2017),  one

South Carolina U.S. District Court held that a receiver had standing in his role to

return the investment of losers in a Ponzi scheme to pursue claims against winners and thereby effect his role of achieving equity. In an article entitled *Common Law Restitution and Ponzi Schemes*, 92 <u>Boston Univ. Law Review</u> 939 (May 2012), the legal commentator points to state common law of restitution and unjust enrichment rather than the bankruptcy courts as the best forum for addressing possible inequities in effecting restitution to victims:

> Rights and remedies between fraud victims are (best) addressed by the common law of restitution and unjust enrichment including (significantly) the equitable rights and remedies that make up much of this part of the law. Because the claim of net winners and losers turn on textbook restitution issues, the Madoff liquidation is also the greatest restitution case in history, measured by the amounts at stake.[7]

Thus, the district court's expressed concern here that because the overarching class may turn out to be comprised of both "winners" and losers, the claims must necessarily be deemed atypical, thus requiring individual rather than class treatment, is misplaced where the primary relief sought is to deem the properties held in constructive trust for appointment of a receiver. At the very least, the concern of unmanageability is premature at the original certification stage and the option to decertify at a later date remains open after 23(b)(2) class status is certified.

---

[7] The introduction to the article states "In the aftermath of the greatest Ponzi scheme in history, involving thousands of victims and billions of dollars in losses, lawyers and judges have begun the task of "sorting out decades of fraud" citing <u>In re Bernard L. Madoff Inv. Sec. LLC</u>, 654 F. 3d 229 (2d Cir. 2011).

In addition, the District Court clearly erred in ruling that commonality and typicality were somehow not present because the viability of the respective claims based on their age vis a vis the three year South Carolina statute of limitations for ordinary breach of contract necessarily varied depending on when the individual investors learned of the breach, thus requiring individual hearings in China. p. 14. JA6017.

However even if it is conceded the limitations period for individual breach of contract cases somehow renders the plaintiffs' claims atypical for certification purposes, demonstrating that defendants breached the individual contracts would still be unnecessary in evaluating their equitable claims alleging unjust enrichment and requesting imposition of a constructive trust and appointment of a receiver. When seeking equitable relief under the Statute of Elizabeth (SC 27-23-10A) or for unjust enrichment and fraudulent conveyance of property, one need not first be a judgment creditor. Anderson v. Thomas, unpub. Case No. 2018-875   (S.C. App. 2021) *citing* Lebovitz v. Mudd, 358 S. E. 2d 698, 700 (S.C. 1987).   And, the limitations period does not even begin to run until the actual fraudulent conveyance. Commercial Credit Loans Inc. v. Riddle, 512 S. E. 2d 123 (S.C. App. 1999) (interpreting 6-year limitation for fraudulent conveyance action). Thus, even a cursory examination of the merits of the limitations defense at this early stage shows that it is not viable and should properly be stricken from the Answer as an affirmative

defense. Furthermore, even if somehow the three years for bringing a breach of contract action had expired (it did not) since the conveyance of the stolen funds and conversion to real property in South Carolina occurred, accrual would be tolled until the fraud is discovered by the victim. S.C. Code Ann. §15-3-530.

Based on the above South Carolina authority, plaintiffs maintain that defendants' purchase of the properties in South Carolina using stolen funds clearly fell within the three-year period, even without the necessity of conducting individual hearings as to tolling.  Therefore, the lower court's reliance upon the need for hundreds of tolling hearings as grounds for ruling that the proposed class would be unmanageable alone constitutes reversible error.

In summary the District Court's opinion ruling denying certification on the grounds of lack of commonality and typicality was unsupported both legally and factually warranting reversal by this appellate court and either ordering certification of the classes as defined or, at the very least remanding for a full blown plenary hearing as to issues of commonality and typicality.

**B.    The court clearly erred in its factual finding that the aggregated claims would not be manageable after formation of a constructive trust for lack of typicality because of the absence of a victim database and alleged necessity of compliance with the Rules of the Hague Convention.**

The District Court, in denying class certification below, stated that "preliminarily the Hague Convention would need to be followed to even access a

database where the identities of all of the investors may be found. There is nothing in the record to indicate the PRC government would be cooperative in this endeavor." JA6019. As noted, *supra*, the court conducted virtually no scrutiny of the record as required and these findings are completely unsupported by the documentary evidence. While "(p)laintiffs need not be able to identify every class member at the time of certification," "if class members are impossible to identify without extensive and individualized fact finding or 'mini-trials,' then a class action is inappropriate.'" EQT Prod. Co. v. Adair, 764 F.3d 347, 358 (4th Cir. 2014) (citing Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 593 (3d Cir. 2012). However, as is clear from the record, the Nanjing Peoples Court does have a list of victims and Plaintiffs' expert witness, Ivan Cardillo, in his report has clearly provided a way to identify those individuals. (*See* Cardillo Report, Ex. 3, Sub-Exhibit 3-44 JA3483-JA3484; S*ee also,* Ex. 12*,* Supp*.* Aff. of Ivan Cardillo regarding database registration, Nov. 3, 2022, JA4243-JA4263.). Also, Plaintiffs have counsel in China who have extensive ties to China and can easily obtain this information from the Nanjing Court. It is without dispute that tens of thousands of people were affected by this Ponzi scheme.[8] The proposed class as Cardillo described in his expert report

---

[8] The Court is directed to JA2390 and JA2390A, which is Cardillo's graph of the Ponzi scheme concocted by Liu. JA2390 shows the flow of money in China from investors through shell companies into the United States and eventually to the golf course purchases in Myrtle Beach, South Carolina.

can be ascertained by obtaining the names from the Peoples Court in Nanjing. Here, the list of victims in the Nanjing Peoples Court is part of an official governmental record and can be easily verified by Plaintiffs' Chinese counsel. Also, WeChat, a nationally recognized internet service, can also help in locating any class members.

As for the Hague Convention, the record is completely bereft of any briefing by the parties or legal analysis by the court as to the applicability of the Hague Convention in identifying class members or practicalities for service of process utilizing those treaties. Plaintiffs maintain that the district court was prematurely erecting barriers to class treatment of these claims and was illegally seeking to justify denial on grounds of mere complexity with the knowledge that denial would constitute the death knell of the litigation.

**V.    The District Court committed legal error in failing to rule that South Carolina law governed adjudication of plaintiffs' claims seeking equitable relief to remedy unjust enrichment and fraudulent conveyance, South Carolina being the situs of the real property purchased and presently held by defendant using their stolen funds; alternatively the question of choice of law should have been certified to the SC Supreme Court.**

The district court indicated that it was "not persuaded" by plaintiffs' contention that the equitable remedy of constructive trust warrants the application of the law of South Carolina where the situs of the property was transferred. JA6019. One stated reason below for refusing to apply South Carolina law in effecting equity, unrelated to choice of law, was anticipated lack of cooperation by the Chinese

government in enforcing this District Court's Orders, leading to the conclusion that the classes would not be manageable if certified. But there is nothing in the record to indicate China would not be cooperative and would refuse to honor a receiver's orders effecting restitution pursuant to South Carolina law. Thus, the District Court's finding in that regard was unsupported and clearly erroneous.

Apart from expected refusal of cooperation by China, the lower court arrived at its determination that the claims would be governed by Chinese law, thereby rendering them unmanageable, without even attempting to apply traditional choice of law analysis which, plaintiffs maintained, strongly favors application of the law of South Carolina. A federal court exercising its diversity jurisdiction over state law claims is required to apply the choice of law rules of the state in which it is sitting. Klaxon v. Stentor Electric, 313 US 486, 61 S. Ct. 1020 (1941). South Carolina courts generally follow the traditional choice of law rules as stated in the Restatement (First) Conflict of Laws (1934). Menezes v. WL Ross, LLC, 744 S.E. 2d 178, 188 n.2 (S.C. 2013). In determining which state's law should apply to adjudication of a claim, the characterization of the claim is determined by reference to the laws of the forum. Ashmore, supra citing Restatement (First) Conflict of Laws, sec. 7. The Ashmore court struggled with characterizing claims for fraudulent conveyance of property stolen in a Ponzi scheme, as either constituting torts or breaches of contract

in order to identify the place of the injury. Without resolving the issue of choice of law, the court there certified the question to the South Carolina Supreme Court

Plaintiffs seek application of South Carolina law because their claims here are more akin to the old common law torts of trover and replevin than claims for breach of contract. Replevin was an action to recover the possession of specific chattels together with damages for their unlawful detention. Trover was an action for damages arising out of the unlawful conversion of personal property. <u>Farmer v. Florence County Sheriff's Office</u>, 738 S.E. 473 (S.C. 2013). In South Carolina, the so-called claim and delivery statutes (S.C. Code Ann. Sec 15-69-10) combine common law actions trover and replevin. Ibid. Claims and delivery, as well as attachment are provisional remedies meant to preserve status quo during litigation. <u>Ibid</u>. The claims and delivery action is a simple one and can be filed in lower courts of limited jurisdiction and as noted affords only a provisional remedy with a trial to determine ownership to follow. The purpose is to protect rights of the true owner to obtain property in its actual form <u>if practicable and the remedies are available in both law and equity</u>. <u>Charlotte Barber v. Branham,</u> 191 S.E. 184 (S.C. 1937).

By the same token, the equitable remedy of constructive trust is interrelated with the remedies of claims and delivery and they are often pled together. See <u>SSI Medical v. Cox,</u> supra. The constructive trust remedial device is designed to determine the beneficial owner of property for which money is paid by accident,

fraud, or mistake or has been acquired by breach of trust or violation of fiduciary duty. In <u>SSI, supra</u> the court created a constructive trust rather than rule on the alternatively pled claims and delivery claim or common law conversion. Here, given the complexity and scope of this litigation, imposition of a constructive trust advances the public policies of the South Carolina claims and delivery statutes while achieving the same end results. The remedies sought here mirror those of common law replevin and trover, plaintiffs request that this court reverse the decision of the lower court and apply the law of the situs of the property, South Carolina. That state has the most significant interest in this action which is, boiled down, essentially an action for replevin and trover of multiple real properties seeking return to the rightful owners.

The majority of states have adopted the <u>Restatement (Second) of Conflicts of Laws,</u> sec. 221 by applying the law of the state with the most significant interest in the subject matter. And in those that <u>have</u> adopted the significant interest test, in replevin actions, the law of the state where the property is physically transferred governs because that state's citizens have the greatest interest in how the property is disposed of. <u>See, e.g.,</u> <u>Abbott Labs v. Feinberg,</u> 477 F. Supp. 3d 57 (S.D.N.Y. 2020) (applying New York law); <u>Reif v. Nagy,</u> 106 N.Y.S. 3rd 5(1st Dept. App. Div. 2019) (artwork stolen from holocaust victims in Germany located in New York). While the significant interest test has <u>not yet</u> been adopted by South Carolina, it has been

applied in analogous cases. Ashmore , supra.  For example, the law of the situs where the property transferred has been held to govern over conflicting law of the jurisdiction where the property was illegally obtained  in several South Carolina cases.  Ibid. citing Adams v. Fellers, 70 S. E. 212 (S.C. 1911) and Ayers v. Deportes, 35 S. E. 218 (S.C. 1900).  South Carolina has never adopted the view advocated by defendants here in this context that fraudulent transfers are torts and that the law to be applied is the law of the state where the harm occurs. See Ashmore, citing Sheldon v. Blauvelt, 7 S.E. 593 (S.C. 1888).

Finally, the District Court's factual determinations with respect to the alleged database and need for use of the Hague Convention as justification for not choosing the law of South Carolina to govern the plaintiffs' claims in this diversity matter were unsupported in the record and clearly erroneous, the court having failed to conduct a rigorous review as required in the context of class certification. At the very least those rulings were premature and would require a plenary hearing.  This court, pursuant to the *Erie*  doctrine, may, of course interpret state law in the absence of directly controlling precedent. Roe v. Doe, 48 F.3d 404, 407 (4th Cir. 1994). However, this Court also may elect to certify questions of state law to the Supreme Court of South Carolina pursuant to Rule 244 of the South Carolina Appellate Court Rules ("SCACR"). Certification, where available, is meant to resolve an "uncertain

question of state law whose resolution might affect the pending federal claim."
Houston v. Hill, 482 U.S. 451, 471, 107 S. Ct. 2502 (1987).

Here, this appellate court must reverse the ruling of the district court rejecting the application of South Carolina law and instead rule that the claims are in fact so governed. In the alternative, plaintiffs maintain that the importance of establishing law governing, in a type of claim that will certainly recur, justifies certifying the choice of law issue to the South Carolina Supreme Court.

**VI.    The District Court failed to consider, but should have considered, the adequacy of Cheng and Cai as Class Representatives. Plaintiffs presented substantial evidence in support of class certification that the District Court, based on its Order, appeared to pass over completely.**

While the District Court did not address the adequacy of representation of Cai and Cheng, Plaintiffs address that in this appeal so the Court can consider Plaintiffs' Motion for Class Certification and all of the facts surrounding the request. Cai is a Chinese National living in the United States who came here on a special talent visa (see Cai Deposition, Exhibit 5, JA3879). He is a poet and a professional poem writer. JA3879. He has a green card and lives in Houston. JA3880. He can identify Liu and showed an official copy of the contract Liu agreed to. JA3886. He gave information to the Nanjing police regarding the contract. JA3890. He acted as Sherlock Holmes and has sent photos to the police since 2007. JA3940. He met with Liu in Myrtle Beach and recorded his conversation. *Id.* at JA3941. He

protested at Liu's headquarters in China.  JA3960.  He realized he had been tricked.  JA3998.  Sufficeth to say that Cai is an adequate representative based on his investigation and involvement in the case.

The other class representative, Cheng, came to the United States from China to have his deposition taken.  He is a salesman in China.  Deposition of Cheng JA3508; he is self-employed, JA3508; he owns his own company in China, JA3508; he has two contracts which are unpaid, JA3555; the Founders companies are subsidiaries of Xuang according to him and are engaged in money laundering, and they transferred money from one company to another. JA3560.  No restitution has been paid on the two of his contracts.  JA3562.  Cheng went to the Nanjing office to investigate.  JA3585.  In 2006, several thousand people went to the Nanjing office to protest.  JA3586.  Cheng also went to the Nanjing court with over 1,000 people concerning these issues.  JA3586.  He has a 28-page spreadsheet with over 100 names and has power of attorney for all of those people.  JA3601, JA3636, JA3637.  Further, both Cai and Cheng signed the same form contracts and have the same claims as all class members.  Cai and Cheng have been willing to travel to South Carolina to have their depositions taken.  Cai and Cheng will adequately and favorably protect the interests of the class and each has a common interest in getting the monies which are currently invested in the golf courses.

Plaintiffs in their Motion for Certification addressed the adequacy of Plaintiffs' class representatives. However, the District Court failed to do so. Plaintiffs provide this information to this Court to consider this testimony on appeal from Plaintiffs' Motion for Class Certification.

## CONCLUSION

For the reasons set forth herein and because the United States is not a haven for criminals, the Plaintiffs request that this Court reverse the District Court below, and either direct the District Court to certify a class (or subclasses) of Plaintiffs, based on one or more of the proposed Class Definitions contained in the Plaintiffs' Motion. In the alternative, remand this case to the District Court with instructions for a more thorough and complete review of the Class Certification question, which is of central and fundamental importance to tens of thousands of putative class plaintiffs who have been defrauded by the Defendants of billions of dollars of their savings.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is necessary in this case because the record is voluminous and the Court will undoubtedly have many questions. Further the District Court failed to hold oral argument and thus did not have a full understanding of the law and the evidence. Finally, oral argument must be allowed in every case since this appeal is

not frivolous and the dispositive issues under FRCP 23 have not been authoritatively

decided by the District Court.

SUBMITTED BY:

Gene M. Connell, Jr.
KELAHER, CONNELL & CONNOR, P.C.
Post Office Drawer 14547
Surfside Beach, SC 29587-4547
(843) 238-5648 (Phone)
(843) 238-5050 (Facsimile)
gconnell@classactlaw.net

Reese R. Boyd, III
DAVIS & BOYD LLC
Post Office Box 70517
Myrtle Beach, SC 29572
(843) 839-9800 (Phone)
(843) 839-9801 (Facsimile)
reese@davisboydlaw.com

Anthony Scordo, III
1425 Pompton Ave #2
Cedar Grove, NJ 07009
(973) 837-1861 (Phone)
(973) 837-9650 (Facsimile)
anthonyscordo@msn.com

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 23-1806      **Caption:** Xunhui Cheng, et al. v. Dan Liu, et al.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

---

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

---

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

---

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

---

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✔]   this brief or other document contains ____10,420____ [*state number of*] words

[ ]   this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✔]   this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word _____ [*identify word processing program*] in
Times New Roman 14 _____ [*identify font size and type style*]; **or**

[ ]   this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Gene M. Connell, Jr.

Party Name  Gene M. Connell, Jr.

Dated: 10-6-23